**Carl SMITH, Appellee,**

v.

**Robert L. DANIELS, Appellant.**

Court of Appeals of Tennessee,
Eastern Section.

March 26, 1982.

Permission to Appeal Denied by
Supreme Court June 14, 1982.

L. Caesar Stair, III, of Bernstein, Susano, Stair & Cohen, Knoxville, for appellant.

Gary R. Wade of Ogle & Ogle, Sevierville, for appellee.

## OPINION

PARROTT, Presiding Judge.

This case arises out of the repossession and public sale of equipment collateral pursuant to a security agreement and defaulted promissory note. Appellant, the debtor under the note, brings this appeal challenging the chancellor's decree awarding appellee a deficiency judgment of over $50,000.00 on a $54,000.00 note. Appellant argues that the sale of the collateral was conducted in a commercially unreasonable manner, and that the chancellor erred in finding to the contrary. We must agree with appellant. Based upon the evidence presented by the parties and the law governing the commercial reasonableness of sales, we conclude that this sale was not conducted in a manner consistent with the legal standards protecting a debtor's interests in the resale of collateral. As a result, the law demands that we reverse the chancellor's finding and presume that a commercially reasonable sale would have satisfied this debt.

Appellant and appellee were, until June of 1978, partners in Tramel Amusement Co., a partnership located in Pigeon Forge, Tennessee, and in the business of renting various coin operated amusement equipment. On June 17, 1978, this partnership was formally dissolved. At that time, appellee sold to appellant his interest in the partnership, which consisted of his ownership share in all of the amusement equipment. In order for appellant to make this purchase, appellee lent appellant $54,000.00. This loan was secured by all of the amusement equipment, as detailed by type and serial number in a security agreement dated July 17, 1978, and by all after-acquired equipment. A financing statement was properly filed by appellee pursuant to the requirements of the Uniform Commercial Code in Tennessee.

Appellant defaulted on the note. Appellee obtained an order of possession from the chancellor on September 25, 1979, to repossess the collateral as was his right under the security agreement. Appellee and his agents regained possession of the collateral and obtained, on November 26, 1979, an order to

> . . . sell, after advertisement, such collateral at public auction at 11:00 a. m. Saturday, December 15, 1979, at the East Gate Plaza, Dolly Parton Parkway, Sevierville, Tennessee 37862. That in accordance with the remedies provided to the plaintiff under the Uniform Commercial Code, the plaintiff shall sell the collateral on terms of cash to the highest and best bidder.

Appellee hired Carl Hickam to sell the collateral, but Hickam was struck by an illness requiring hospitalization and was unable to do so. Appellee then hired Action Auction Company, a professional auction company operating in the southeast, to take over the sale and to conduct the auction. The auction was held on December 15, 1979, at two locations. The collateral was sold in two lots for $6,000.00 and $6,500.00, respec-

tively. After the sale, appellee filed a motion seeking a deficiency judgment. Appellant challenged the commercial reasonableness of the sale, but appellee's motion was granted by the chancellor on August 1, 1980, and judgment was entered in accordance with that finding on September 24, 1980. Appellant moved to alter or amend this judgment, but the chancellor, after oral arguments on November 20, 1980, overruled the motion on June 22, 1981. Appellant then appealed, bringing the case before this Court.

■ Appellant contends that the sale was not commercially reasonable. T.C.A. § 47–9–504(3) states that "[s]ale or other disposition may be as a unit or in parcels and at any time and place and on any terms *but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable.*" (Emphasis supplied.) T.C.A. § 47–9–507(2) further narrows this standard:

The fact that a better price could have been obtained by a sale at a different time or in a different method from that selected by the secured party is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner. If the secured party either sells the collateral in the usual manner in any recognized market therefor or if he sells at the price current in such market at the time of his sale or if he has otherwise sold in conformity with reasonable commercial practices among dealers in the type of property sold he has sold in a commercially reasonable manner. The principles stated in the two (2) preceding sentences with respect to sales also apply as may be appropriate to other types of disposition. A disposition which has been approved in any judicial proceeding or by any bona fide creditors' committee or representative of creditors shall conclusively be deemed to be commercially reasonable, but this sentence does not indicate that any such approval must be obtained in any case nor does it indicate that any disposition not so approved is not commercially reasonable.

Although the Code is careful to point out that a creditor's failure to procure the maximum possible price for collateral does not in and of itself make a sale commercially unreasonable, a sufficient resale price *is* the logical focus of the protection given debtors by these sections. *See* White & Summers, *Uniform Commercial Code*, § 26–11, p. 1115 (2d. Ed.1980). This Court's duty, then, is to determine from all the evidence contained in the record, presuming the chancellor's conclusions to be correct, whether the facts preponderate that appellee took all steps reasonably necessary to insure that the sale of the collateral would bring appellant a fair price.

■ There are several factors which, taken together, caused this sale to be commercially unreasonable. First, no list was made of the equipment collateral that was repossessed. As a result, no definitive list was available at sale. We feel that it should be a bare minimum in repossession proceedings to keep a detailed and accurate list of exactly what has been reclaimed. Failure to do so creates the potential for all manner of abuses in the repossession process. With no clear record of what was available at sale, potential purchasers were handicapped in making their decisions. For the same reason, it is impossible for this Court to adequately review the record and assess commercial reasonableness when we have no way of knowing for sure what was sold. Appellee erred in not making a list, for a simple lack of information directly affected the commercial reasonableness of the sale in this case.

A second factor which materially affected the reasonableness of this sale was the manner in which it was advertised. In *Mallicoat v. Volunteer Finance & Loan Corp.*, 57 Tenn.App. 106, 415 S.W.2d 347 (1966), this Court stated that "[t]he requirement that the property be disposed of in a 'commercially reasonable' manner [signifies] that the disposition shall be made in keeping with prevailing trade practices among reputable and responsible business and commercial enterprises engaged in the same or a similar business."

In this case, there is a conflict in testimony concerning the standard practices for sales of amusement equipment between appellee's witness, who is an employee of the general auction company that conducted this sale, and appellant's witness, who is one of the leading dealers in amusement equipment in the state of Tennessee. Appellee's witness has participated in several sales of amusement equipment in his two years with Action Auction Company. This witness did not consider himself an expert in amusement equipment, was not personally familiar with individual types of the equipment, but felt that he could give a fair opinion as to what it was worth.

Appellant's witness is a regular and successful dealer in amusement equipment in the East Tennessee area, is personally familiar with individual types of amusement equipment, and considers himself an expert in the field. Under the authority of *Mallicoat*, we feel that more weight should be given to the testimony of appellant's witness because he is clearly better able to give information relevant to the prevailing trade practices in this type of business.

Appellant witness' testimony indicates with certainty that this sale was conducted in a commercially unreasonable manner. The sale was advertised twice in the *Sevier County News* five days and three days before the date of the sale, respectively. Notice was posted at the Sevier County Courthouse. Telephone calls were also made to amusement equipment dealers listed in the Knoxville "yellow pages." Appellant's expert testified that it was the standard practice in sales of this type to advertise in newspapers in each of the state's major cities, to advertise in trade magazines, and to circulate flyers to dealers. We do not today specifically endorse or require that these steps be taken. It does, however, appear from this testimony that the specific advertising efforts made for this sale were inadequate to reach persons interested in the sale of this type of equipment and to assure that a reasonable price would be attained at sale. Appellee made inadequate advertising efforts in this case to protect the debtor's interests.

Other factors were present at this sale which contributed to its unreasonableness. The equipment was stored in such a way as to make individual inspection difficult and individual testing impossible. The warehouses had no electric lights or electricity, and the machines were stacked together in such a way that easy access was impossible. Finally, the equipment in this case was sold in bulk rather than individually. Appellant's expert testified that the standard method of sale was by the individual unit. We make no absolute requirement today that such equipment be sold individually, but compounded by the fact that no list of the merchandise was available and inspection was unduly hampered, we must hold that this sale was not commercially reasonable, and reverse the chancellor's finding as being against the preponderance of evidence.

Because appellee failed to conduct a commercially reasonable sale and a deficiency resulted, we must presume that a commercially reasonable sale would have satisfied appellant's debt. *Commercial Credit Corp. v. Holt*, 17 U.C.C. 316 (Middle Section, Court of Appeals, April 25, 1975). Appellee did not prove at trial before the chancellor by a preponderance of the evidence that the value of the resold collateral was less than the amount due on the note. Therefore, the chancellor's award of the deficiency judgment is reversed. Let all costs be taxed to appellee.

GODDARD and FRANKS, JJ., concur.